**SO ORDERED**

**SIGNED this 14 day of January, 2025.**

Pamela W. McAfee
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

IN RE:

CASE NO.

**CATHERINE MILLER HUTSELL,**      24-01440-5-PWM
    **DEBTOR**      CHAPTER 13

## MEMORANDUM OPINION SUSTAINING
## TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTIONS

The matter before the court is the objection of the chapter 13 trustee (Trustee) to the exemption in life insurance proceeds claimed by the debtor, Catherine Miller Hutsell. The Trustee filed his objection on August 26, 2024, D.E. 37, and Ms. Hutsell filed a response on September 9, 2024, in which she asserted that the life insurance payout at issue qualified as "compensation for the death of a person upon whom the debtor was dependent for support" and therefore was appropriately claimed as exempt under § 1C-1601(a)(8) of the North Carolina General Statutes. D.E. 41. The court conducted a hearing on November 21, 2024 in Raleigh, North Carolina, after which it took the matter under advisement. For the reasons that follow, the Trustee's objection is sustained.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a deeply unfortunate set of facts. Catherine Miller Hutsell filed a petition for relief under chapter 13 of the Bankruptcy Code on April 30, 2024, and on May 8, 2024,

just a week after she filed her petition, Ms. Hutsell's husband unexpectedly passed away. On May 22, 2024, Ms. Hutsell's counsel filed a Rule 1007(h) notice that disclosed Ms. Hutsell's entitlement to a group life benefit in the amount of $20,000, D.E. 17. That notice further indicated that Ms. Hutsell was also the beneficiary of an insurance policy with American General, although she did not yet know the amount of the American General death benefit. *Id.* Ms. Hutsell filed a second Rule 1007(h) notice on June 4, 2024, stating that the American General policy provided a death benefit of $500,000 that would be paid to Ms. Hutsell within several weeks. D.E. 20. The issue now before the court requires it to consider, for a second time, how Ms. Hutsell's receipt of the American General life insurance proceeds impacts this chapter 13 case.

The question first came before the court on June 17, 2024, when the Trustee filed an amended objection to Ms. Hutsell's chapter 13 plan that, in addition to previously asserted objections not relevant here, set forth this objection grounded in the "liquidation" test  contained in § 1325(a): "Based on the debtor's receipt of life insurance proceeds, it appears that she will need to propose a plan which will pay 100% of all allowed priority and general unsecured claims, and that proposes to pay interest in allowed general unsecured claims at the federal rate effective as of the Petition date." D.E. 23 at 1. In her response, Ms. Hutsell asserted that the liquidation test should be calculated as of the petition date, at which time the life insurance proceeds would not have been property of the estate, such that the value of the life insurance proceeds was irrelevant to plan confirmation. D.E. 26 at 1-2. At a July 18, 2024 hearing on the Trustee's objection to confirmation, the court disagreed with Ms. Hutsell's argument and noted that had the case been initially filed under chapter 7, the life insurance proceeds would have become property of the estate under § 541(a)(5) and administered for the benefit of creditors. The court thereafter entered an order sustaining the Trustee's objection and denying confirmation. D.E. 29.

As relevant to the issue before the court today, on August 8, 2024, Ms. Hutsell amended her Schedule C-1 to claim exemptions in the full amount of the proceeds from both the group life insurance policy under North Carolina General Statute § 58-58-165 and the American General policy pursuant to North Carolina General Statute § 1C-1601(a)(8).[1] D.E. 34 at 3. Ms. Hutsell filed an amended plan on August 18, 2024. The Trustee filed an objection to the claimed American General proceeds exemption on August 26, 2024, contending that the exemption allowed under § 1C-1601(a)(8) "is not sufficiently broad to encompass an exemption in insurance proceeds received by a debtor due to the death of another" and should for that reason be disallowed. D.E. 37 at 2 (citing *In re Ragan*, 64 B.R. 384 (Bankr. E.D.N.C. 1986)). In her response, Ms. Hutsell argued that "the life insurance payout qualifies as 'compensation for the death of a person upon whom the debtor was dependent for support'" and, as such, was appropriately claimed as exempt. D.E. 41 at 1. In recognition of the nuanced policy rationales and limited legislative history regarding this issue, the parties endeavored to reach a mutually acceptable agreement, but could not. A hearing on confirmation and the Trustee's objection to the claimed exemption was conducted on November 21, 2024, after which the court denied confirmation with the agreement of Ms. Hutsell and took the exemption issue under advisement. After full consideration and for the reasons that follow, the Trustee's objection will be sustained.

---

[1] The Trustee agreed at the November 21, 2024 hearing that his objection pertains only to the proceeds paid under the American General personal life insurance policy, which Ms. Hutsell claims as exempt under § 1C-1601(a)(8), and not to Ms. Hutsell's retention of the proceeds from the separate group life policy, which is exempt under a different provision of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 58-58-165.

## DISCUSSION

### I.    Applicable Statutes and Precedent

Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a)(5) augments the estate with certain property acquired postpetition, to include:

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
> (A) by bequest, devise, or inheritance;
> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
> (C) **as a beneficiary of a life insurance policy** or of a death benefit plan.

11 U.S.C. § 541(a)(5) (emphasis added). Pursuant to § 541(a)(5)(C), the life insurance proceeds at issue in this case are property of the estate unless there is an applicable exemption available to Ms. Hutsell.

Exemptions are governed by § 522 of the Bankruptcy Code, which provides that an individual debtor may exempt from property of the estate either the property listed in § 522(d) or property that is exempt under applicable state law, unless the applicable state law does not authorize a debtor to claim the exemptions under § 522(d). In other words, individual debtors may choose to claim property as exempt under either the Bankruptcy Code or state law, unless the state law says otherwise. North Carolina law says otherwise, and residents of North Carolina may only (with some exceptions not relevant here) claim exemptions as authorized by North Carolina law. *See* N.C. Gen. Stat. § 1C-1601(f). Put more simply, property of the estate is defined by 11 U.S.C. § 541, but property that may be exempted from the estate is governed by North Carolina law.

Section 1C-1601(a)(8) of the North Carolina General Statutes provides as follows:

(a)     Exempt Property. – Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:

* * *

(8) Compensation for personal injury, including compensation from private disability policies or annuities, ***or compensation for the death of a person upon whom the debtor was dependent for support***, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation.

N.C. Gen. Stat. § 1C-1601(a)(8) (emphasis added).

For context, the statute also exempts "[l]ife insurance as provided in Article X, Section 5 of the Constitution of North Carolina." N.C. Gen. Stat. § 1C-1601(a)(6). That section of the constitution's Article X provides:

A person may insure his or her own life for the sole use and benefit of his or her spouse or children or both, and upon his or her death the proceeds from the insurance shall be paid to and for the benefit of the spouse or children or both, or to a guardian, free from all claims of the representatives or creditors ***of the insured or his or her estate.*** Any insurance policy which insures the life of a person for the sole use and benefit of that person's spouse or children or both shall not be subject to the claims of creditors ***of the insured*** during his or her lifetime, whether or not the policy reserves to the insured during his or her lifetime any or all rights provided for by the policy and whether or not the policy proceeds are payable to the estate of the insured in the event the beneficiary or beneficiaries predecease the insured.

N.C. Const. Art. X, Sec. 5 (emphasis added).

Collectively, the language in these statutes and the constitution makes plain that the North Carolina Constitution protects from *an insured's* creditors the proceeds of the insured's life insurance policy, both during the insured's life and as paid to the insured's spouse and/or dependent children after the insured's death. By contrast, the statute in subsection (a)(8) protects from *a debtor's* creditors any "compensation" paid to the debtor as a result of personal injury to that debtor, and also "compensation" paid to the debtor "for the death of a person upon whom the

debtor was dependent for support" (except insofar as there may be "funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation"). The issue now before the court is whether the language in § 1C-1601(a)(8) protecting from creditors the compensation paid to a debtor upon the death of a person upon whom the debtor was dependent for support is limited to compensation arising from some kind of legal action, as the Trustee argues, or whether the "compensation" described in the statute may also include life insurance proceeds paid to the debtor upon the death of a person upon whom the debtor was dependent for support.

Exemptions are to be construed liberally and in favor of the debtor when possible. *See, e.g., In re Crosson*, 649 B.R. 668, 669 (Bankr. M.D.N.C. 2023) ("The North Carolina Supreme Court has consistently held that debtors' claims for exemptions are to be given a liberal construction in favor of the exemption."). So, "[i]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to the debtor, then the favorable method should be chosen." *Id.* (quoting *In re Man*, 428 B.R. 644, 653 (Bankr. M.D.N.C. 2010)) (internal citation omitted). That said, as the *Crosson* court also emphasized, "'the actual language used in a statute, including the state constitution, still must control.'" *Crosson*, 649 B.R. at 669 (quoting *In re Eschelman*, No. 11-08925-8-SWH, 2012 WL 1945709, at *1 (Bankr. E.D.N.C. May 30, 2021) (claimed exemption of a life insurance policy disallowed where policy was for the benefit of a trust as well as the insured's spouse and children, and thus not *solely* for the benefit of the debtor's spouse or children, as stated in the constitution)).

The specific question now before the court was squarely addressed and discussed at great length in *Ragan*, 64 B.R. 384. As that court explained, after determining that the language at issue (which was  identical to the language in this case) was ambiguous, a court must both apply a liberal

construction to exemption laws and, "[a]t the same time, … must attempt to give effect to the legislative intent by construing this ambiguous state statute 'in light of the overall policy of the legislation and the commonly accepted meaning of the words used in the statute.'" *Ragan*, 64 B.R. at 386 (quoting *Anderson v. Babb*, 632 F.2d 300, 308 (4th Cir. 1980)). For reasons discussed more fully below, *Ragan* concluded that the statute does not exempt the proceeds of a life insurance policy received by the debtor as beneficiary.

## II.    Debtor's and Trustee's Arguments

Ms. Hutsell contends that *Ragan* was wrongly decided at the time, and should not be considered persuasive or binding now – contending at least partly that while *Ragan* started with the statement that the decision would turn on the definition of "compensation," it never actually discussed that definition. She contends that the plain language of the statute, in referring to "compensation," must be read in its most evident and obvious way: This would, she reasons, include the proceeds of a life insurance policy according to most standard definitions. She notes that Black's Law Dictionary defines the verb "compensate" as "[t]o make an amendatory payment to; to recompense (for an injury) <the court ordered the defendant to compensate the injured plaintiff>." *Compensate*, <u>Black's Law Dictionary</u> (11th ed. 2019). In addition, however, and more to the specific point before the court, Ms. Hutsell also cited Black's definition of the *noun* "compensation," as follows: "Remuneration and other benefits received in return for services rendered; esp., salary or wages;" and, "[p]ayment of damages, or any other act that a court orders to be done by a person who has caused injury to another. In theory, compensation makes the injured person whole." *Id.*; *see also Compensation*, <u>Merriam-Webster Dictionary</u> (11th ed. 2003) (defining compensation as "the state of being compensated," as "something that constitutes an equivalent or recompense," and as "payment to unemployed or injured workers or their dependents").

Finally, Ms. Hutsell advances policy considerations that would, in her view, support this court's recognition of a debtor's right to receive life insurance proceeds paid on account of the death of a supporting spouse free of the claims of the *beneficiary's* creditors just as they may be received free of the claims of the *insured's* creditors. She contends that there is no basis upon which to exclude life insurance proceeds from the "compensation" paid as a result of "personal injury" when those proceeds are paid in consequence of "the death of a person upon whom the debtor was dependent for support." If a debtor can exempt the proceeds of a legal action arising from a supporting spouse's accidental death free of the claims of the debtor's creditors (and free of the insured's creditors, except for the "funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation,"), she reasons, why should the debtor not be permitted to retain life insurance proceeds paid as a result of the supporting spouse's death, to the same extent? In sum, Ms. Hutsell maintains that there is no legitimate policy reason to distinguish compensation paid to a decedent's beneficiary due to legal action against a tortfeasor from "compensation" paid to a decedent's beneficiary pursuant to an insurance contract.

The burden is on the Trustee to prove that the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). The Trustee offers several arguments in support of his position that Ms. Hutsell cannot properly exempt the life insurance proceeds: First, that § 1C-1601(a) includes not only subsection (a)(8) and its references to "compensation" but also subsection (a)(6), which, by virtue of its specific treatment of the proceeds of life insurance policies, makes plain under standard principles of statutory construction that subsection (a)(8) must refer to something *other* than life insurance. Next, the Trustee notes that the *Ragan* decision remains good law, and that the North Carolina General Assembly – which enacted amendments to § 1C-1601 *after* the *Ragan* opinion was decided, without changing the language upon which that decision is based – is presumed to

8

have done so with full knowledge of then-existing judicial interpretations of the statute. Reasoning that the legislature could and would have made necessary changes to the language of subsection (a)(8) if it determined that the *Ragan* court had interpreted the statute incorrectly, the Trustee concludes that the fact that the legislature did make other clarifying changes to subsection (a)(8) but did not enact changes to specifically include life insurance proceeds demonstrates that the *Ragan* court got it right and that Ms. Hutsell cannot claim an exemption in the life insurance proceeds at issue here.

## III.    Analysis

### A.  Language of the Statute as Construed in *Ragan*

The court begins with the language of the applicable statute, which permits a debtor to exempt:

> Compensation for personal injury, including compensation from private disability policies or annuities, or compensation for the death of a person upon whom the debtor was dependent for support, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and heath care charges related to the accident or injury giving rise to the compensation.

N.C. Gen. Stat § 1C-1601(a)(8). This subsection references "compensation" for death, as distinct from subsection (a)(6), which refers to "life insurance" as provided in the state constitution, and as distinct from the reference to a "policy of group insurance" in § 58-58-165.  "Statutes are to be read harmoniously in a way that renders them internally compatible, not contradictory," and "[i]dentical words used in legislation should have the same meaning; different words carry different meanings." *Philip Morris USA, Inc. v. North Carolina. Dep't of Rev.*, 909 S.E.2d 197, 205 (N.C. 2024) (citations omitted).

As noted above, Ms. Hutsell maintains that the term "compensation" possibly could be read to include insurance proceeds, in that "to compensate" is "to pay," but even Ms. Hutsell's

own cited definitions recognize that compensation is more generally considered to be either payment for *services*, or a monetary payment intended to "make whole" in the context of an injury, especially when ordered by a court. Further, the statute itself, in isolating certain charges and claims that would remain recoverable by creditors notwithstanding the exemption, specifically states that those charges are the "charges *related to the accident or injury giving rise* to the compensation," bringing full circle the reference at the beginning of the subsection to personal injury. In other words, reading the entire subsection as a whole, rather than the second phrase in isolation, leads one to the conclusion that the subsection is intended to address the proceeds from personal injury and wrongful death actions, not compensation for death generally.

That is the interpretation set forth in *Ragan*, 64 B.R. 384. In that case, Judge Small construed the term "compensation" in an earlier iteration of § 1C-1601(a)(8)[2] not to include insurance proceeds payable to a chapter 7 debtor upon the death of her husband. There, as here, the debtor argued that "the proceeds from the policy insuring her husband's life represent[] 'compensation … for the death of a person upon whom the debtor was dependent for support.'" *Id*. at 386. The trustee responded that the statutory language "creates an exemption for compensatory damages received pursuant to a wrongful death action, but not for benefits paid under the terms of a life insurance policy." *Id*. The *Ragan* court noted that the term "compensation" was not defined within the state statute, but that the term typically is used to denote damages paid

---

[2] The current statute is identical to the version in effect when *Ragan* was decided, except that it now also includes the language emphasized here: "Compensation for personal injury, *including compensation from private disability policies or annuities,* or compensation for the death of a person upon whom the debtor was dependent for support . . .." N.C. Gen. Stat. § 1C-1601(a)(8).

to an injured party pursuant to a court or administrative action. *Id*. at 386-87. However, the court noted further that

> [t]he legislative history to 11 U.S.C. § 522, the section of the United States Bankruptcy Code dealing with exemptions, refers to "compensation" as including life insurance proceeds: "Paragraph (11) allows the debtor to exempt certain compensation for losses. These include crime victim's reparation benefits, wrongful death benefits …, [and] life insurance proceeds …." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 361-62 (1977) (cleaned up). While it is clear then that the term "compensation" can be used to describe life insurance proceeds, it would appear from the dictionary definition that the term can also be used to more specifically refer to damages received pursuant to a court action.

*Id*. at 386-87 (cleaned up). Based on that detail, the court found the term to be ambiguous. It then undertook a thorough analysis of the statute and concluded that where § 522(d)(11)(C) provides a specific exemption for life insurance proceeds, and the North Carolina statute in contrast does not, that difference is both meaningful and intentional. *Id.* at 388. The court wrote:

> Since 1868, the North Carolina Constitution has prohibited creditors of an insured from reaching proceeds of a life insurance policy taken out for the benefit of the insured's spouse or children. N.C. Const. art. X, sec. 5. However, North Carolina law has not prevented such proceeds from being reached by creditors of the *beneficiary*, at least not prior to the 1981 enactment of the North Carolina Exemptions Act. This court believes that, had the North Carolina legislature intended to change North Carolina law by exempting life insurance policy proceeds from the claims of the beneficiary's creditors, it would have done so in language more explicit than that contained in N.C. Gen. Stat. § 1C-1601(a)(8). Support for this conclusion is found in the failure of the legislature to adopt any of language of 11 U.S.C. § 522(d)(11)(C) which clearly exempts life insurance proceeds from the reach of the beneficiary's creditors ….

*Id*. at 387-88 (emphasis in original).  The *Ragan* court went on to perform the traditional analysis of examining the term by "looking at adjoining words in the same document," which led it to focus on subsection (a)(8)'s recitation of the costs that are excepted from exemption, those being the "funeral, legal, medical, dental, hospital, and health care charges related to the *accident or injury* giving rise to the compensation." *Id*. at 388 (emphasis in original). Had the legislature intended for subsection (a)(8) to "exempt insurance proceeds as well as wrongful death recoveries," the court

reasoned, "it likely would have referred to medical charges related to the *illness*, as well as to the accident or injury giving rise to the compensation." *Id*. (emphasis in original); *see also Philip Morris*, 909 S.E.2d at 205 (conducting a similar analysis in the context of a statutory amendment to North Carolina's Export Credit Statute).

This court agrees with the *Ragan* court's analysis. This conclusion is further borne out by the subsequent amendment to § 1C-1601(a)(8) enacted in 2005, which – in a comprehensive revision of the entire statute – added only the language emphasized here: "Compensation for personal injury*, including compensation from private disability policies or annuities, . . .*" The clarifying amendment modifying the types of compensation for personal injury that are to be included are exactly the type of clarification that would be used to reverse the *Ragan* decision – in other words, the legislature could have added "including compensation from private life insurance policies" to modify "compensation for the death of a person upon whom the debtor was dependent" – but it did not. When amending statutes, a legislature is presumed to be aware of existing case law interpreting the statute under consideration. *See, e.g., Fearrington v. City of Greenville*, 900 S.E.2d 851, 866 (N.C. 2024) ("When interpreting statutes, we presume that the General Assembly 'acted with care and deliberation and with full knowledge of prior and existing law.'" (internal citation omitted)). In this court's view, the legislature's amendment to § 1C-1601(a)(8), which leaves untouched the language related to compensation for the death of a person upon whom a debtor was dependent for support, solidly supports the *Ragan* court's analysis.

A more recent decision out of the Middle District of North Carolina applied a similarly close reading of the statute. In *In re Butler*, the debtor sought to claim as exempt the $7,500 awarded to her for lost wages as part of settlement of a wrongful termination action, with an additional $7,500 being awarded for non-wage claims of emotional distress. The trustee did not

challenge the debtor's claimed exemption in the emotional distress portion of the settlement proceeds, as those qualify as physical injury under North Carolina law, but argued that compensation for lost wages was "wholly independent and separate from the Debtor's alleged personal injury claim" and thus was not exempt under subsection (a)(8). *In re Butler*, Case No. 20-50897, 2021 WL 3415032, *1 (Bankr. M.D.N.C. 2021). Agreeing with the trustee, the court noted that the statute "only permits resident debtors of North Carolina to exempt 'compensation' for personal injury, as opposed to the personal injury claims or causes of action in their entirety, as some state exemption statutes provide." *Id*. at *2 (citing Virginia and Minnesota statutes that provide exemptions for "all causes of action for personal injury or wrongful death and the proceeds derived from court award or settlement" and for "[r]ights of action for injuries to the person of the debtor or a relative whether or not resulting in death"). Although its focus was on determining what exactly constituted compensation for "personal injury" as opposed to what precisely constituted "compensation," the *Butler* court, like the court in *Ragan*, expressed frustration at the dearth of legislative insight into subsection (a)(8):

> Other tools of interpretative guidance are also of little utility here. Not only is there no legislative history for § 1C-1601, *In re Ragan*, 64 B.R. 384, 387 (Bankr E.D.N.C. 1986), there are also no state court decisions addressing the question at hand. The North Carolina judiciary has not directly considered the scope of § 1C-1601(a)(8) and has provided little guidance on the meaning of "compensation for personal injury" as used in the statute….
>
> It has instead been left to bankruptcy courts to address the interpretive vacuum around § 1C-1601(a)(8). While the bankruptcy court decisions have not delineated the precise boundaries of the available exemption under § 1C-1601(a)(8), several conclusions may be drawn from those decisions as to what constitutes "compensation for personal injury." First, bankruptcy courts have uniformly found that, unlike the comparable federal exemption in 11 U.S.C. § 522(d)(11)(D), § 1C-1601(a)(8) does not limit the "personal injury" exemption to compensation for personal "bodily" injury, thereby allowing a North Carolina debtor to exempt compensation for emotional distress. … Compensation for personal injury does not encompass life insurance proceeds, *Ragan*, 64 B.R. at 389, but does include specific compensation for medical expenses, albeit with a

specifically stated exception for services related to personal injury, i.e. funeral, legal, medical, dental, hospital and health care charges.

*Id*. at \*3 (emphasis and internal citations omitted).

In sum, in order to overrule the Trustee's objection, this court would need to disagree with not only the *Ragan* court's analysis, but also to disregard basic protocols of statutory interpretation that indicate, strongly, that the North Carolina legislature amended this subsection of § 1C-1601 with full knowledge of *Ragan* yet declined to provide the basis for exemption that Ms. Hutsell now seeks. The legislative decision not to amend the portion of subsection (a)(8) at issue is itself an expression of legislative intent. As noted above and as the North Carolina Supreme Court has written multiple times, "[t]he legislature is always presumed to act with full knowledge of prior and existing law and []where it chooses not to amend a statutory provision that has been interpreted in a specific way, we may assume that it is satisfied with that interpretation." *Kornegay Family Farms LLC v Cross Creek Sand, Inc.*, 803 S.E.2d 377, 381 (N.C. 2017) (quoting *Polaroid Corp. v. Offerman*, 507 S.E.2d 284, 294 (N.C. 1998), *cert denied*, 526 U.S. 1098 (1999), *abrogated on other grounds by Lenox, Inc. v. Tolson*, 548 S.E.2d 513, 517 (N.C. 2001) (cleaned up)). And, as explained by the *Polaroid* court, "[l]ong acquiescence in the practical interpretation of a statute is entitled to great weight in arriving at its meaning." *Polaroid*, 507 S.E.2d at 294 (quoting *State v. Emery*, 31 S.E.2d 858, 862 (N.C. 1944)).

### B. Policy Considerations

Despite the court's conclusion here, the analysis was not simple, and the result is not a comfortable one. As the court noted at the July 18, 2024 hearing where Ms. Hutsell's situation was first addressed, Congress chose as a matter of policy to bring into the bankruptcy estate certain assets acquired postpetition that often are received by a debtor at the most challenging time of life and when the funds are most needed: those received as a result of a divorce or death, and

14

specifically including those received by the debtor as a beneficiary of a life insurance policy. 11 U.S.C. § 541(a)(5). North Carolina has made the policy decision not to provide an exemption for those assets.[3]

It is difficult to articulate a rationale to support a debtor being able exempt money obtained from a tortfeasor, or money obtained through a group life insurance policy, but not funds received for which the debtor and the decedent contracted to be paid for the ongoing support of the debtor in the event of death. Perhaps some public policy supports a distinction here, but it is not readily apparent to the court. However, it is not the court's prerogative to attempt to adjust policy, much less to make it, despite the results of that restraint sometimes having hard consequences. *See, e.g., Crosson*, 649 B.R. at 670 (holding that debtor's life insurance policy could not be claimed as exempt under § 1C-161(a)(6) where the policy included a business as a beneficiary along with the debtor's two children, noting that actual statutory language must control such that "'sole use and benefit' [of a debtor's spouse and/or children] means 'sole use and benefit'").

Finally, and again, this court is mindful of the mandate to construe exemptions to benefit the debtor in the absence of statutory limitations. Here, the court simply cannot agree with Ms. Hutsell's position because is bound by what it sees as clear constraints. While it may be *possible* to read § 1C-1601(a)(8) to include life insurance proceeds, that endeavor would require to the court not only to stretch exceedingly far in the debtor's direction, but also to disregard existing precedent and well-established indicia that the legislature did not intend such a reading.

---

[3] Just as the legislature is presumed to know of court decisions interpreting a statute, the General Assembly is also aware of the language of 11 U.S.C. § 541 and that it may change the composition of a bankruptcy estate through its enacted exemptions. For example, § 541 excludes individual retirement plans from the estate, but does not exclude *inherited* individual retirement plans. *See Clark v. Rameker*, 573 U.S. 122, 127 (2014). In North Carolina, however, § 1C-1601(a)(9) was amended in 2013 to specifically allow a debtor to exempt an inherited individual retirement plan.

15

## CONCLUSION

Based on the foregoing, the Trustee's objection to Ms. Hutsell's claimed exemption in the proceeds of the American General life insurance policy is SUSTAINED.

**END OF DOCUMENT**